IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00958-WYD-CBS

RONALD FRAZIER,

      Applicant,

v.

HOYT BRILL (C.C.A.) K.C.C.F., and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

ORDER OF DISMISSAL

---

Applicant is in the custody of the Colorado Department of Corrections.  This matter is before me on Applicant's second amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket #12) filed *pro se* on June 26, 2008. Applicant is challenging his conviction and sentence in Pueblo County District Court case number 96CR1265.  On August 28, 2008, during the initial review of the second amended application, Senior Judge Zita L. Weinshienk entered an order (docket #21) dismissing two of Applicant's eight claims for relief and directing that the case be drawn to a district judge and to a magistrate judge.  The case was drawn to me.

On September 8, 2008, I entered an order (docket #23) directing Respondents to show cause why the application should not be granted.  On October 3, 2008, Respondents filed their Answer (docket #27).  After being granted extensions of time to file a traverse, Applicant filed his traverse (docket #50) on May 19, 2009.  On July 13,

2009, I ordered Respondents to provide the state court record of Applicant's criminal case. In response to that order, the Pueblo County District Court provided a compact disc containing the transcripts of Applicant's criminal trial.

I must construe the second amended application and other papers filed by Applicant liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. After reviewing the entire file and the transcripts of Applicant's criminal trial, I find that an evidentiary hearing is not necessary. For the reasons stated below, the second amended application will be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Applicant is serving a sentence of thirty-six years in prison following his conviction by a jury on one count of second degree murder. On direct appeal, the Colorado Court of Appeals summarized Applicant's crime as follows:

> The prosecution's evidence showed that, after determining that the substances he had purchased from the victim were not the drugs he had expected, defendant searched for, confronted, and then stabbed the victim. The victim entered a friend's vehicle, told him that he had been stabbed, and asked to be taken to the hospital.
>
> The victim's friend testified that he sought aid for the victim but various circumstances had prevented them from promptly proceeding to a hospital, and when they did arrive there, the victim was dead. Defense witnesses, however, testified that the victim's friend had admitted to them that he and the victim had used drugs after the stabbing, and that he had delayed as much as two hours before taking the victim to the hospital.

*People v. Frazier*, No. 98CA0520, slip op. at 1 (Colo. Ct. App. July 22, 1999)

(unpublished) ("*Frazier I*").  The judgment of conviction was affirmed on direct appeal,

*see id.*, and on March 20, 2000, the Colorado Supreme Court denied Applicant's

petition for writ of certiorari on direct appeal.

Following the conclusion of his direct appeal, Applicant filed a postconviction

motion for sentence reconsideration on August 4, 2000.  On November 2, 2000, the trial

court denied the motion for sentence reconsideration.  Applicant then filed a

postconviction Rule 35(c) motion on April 9, 2001, that was denied by the trial court on

September 21, 2001.  On August 22, 2002, the Colorado Court of Appeals affirmed the

denial of the Rule 35(c) motion in part and reversed in part.  *See People v. Frazier*, No.

01CA2028 (Colo. Ct. App. Aug. 22, 2002) (unpublished) ("*Frazier II*").  The trial court

held a hearing on remand and again denied the Rule 35(c) motion on October 6, 2005.

The trial court's order denying the Rule 35(c) motion on remand was affirmed on

December 13, 2007.  *See People v. Frazier*, No. 05CA2459 (Colo. Ct. App. Dec. 13,

2007) (unpublished) ("*Frazier III*").  On March 31, 2008, the Colorado Supreme Court

denied Applicant's final petition for writ of certiorari in the postconviction proceedings.

Applicant filed his original application for a writ of habeas corpus in the instant action on

April 30, 2008.

Applicant asserts eight claims for relief in his second amended habeas corpus

application, including an ineffective assistance of counsel claim with eleven sub-parts.

Applicant specifically claims that:

   (1)    he was deprived of a jury finding on the heat of passion element of second
          degree murder;

   (2)    the trial court erred in failing to instruct the jury on heat of passion;

3

(3)     the trial court erred in precluding opinion and reputation testimony concerning the victim's character for violence and aggressiveness;

(4)     the trial court erred in preventing the defense from impeaching the testimony of Morris Frison with evidence that he had been charged with a felony offense and that he was on cocaine when he gave his statement to the police;

(5)     the trial court erred in refusing to instruct the jury on intervening cause;

(6)     trial counsel was ineffective by:

    (a)     failing to file pretrial motions to suppress statements and evidence, to suppress identification, to recuse the judge, and to receive disclosure of any concessions made by the prosecution to Morris Frison;

    (b)     failing to object to speculative testimony of Mr. Hargrove;

    (c)     failing to object to hearsay testimony of Morris Frison;

    (d)     failing to object to leading questions;

    (e)     failing to adequately prepare for and conduct cross-examination of prosecution witnesses;

    (f)     failing to properly raise an intervening cause defense;

    (g)     failing to interview witnesses favorable to the defense;

    (h)     failing to obtain an independent expert witness;

    (i)     failing to establish a proper record for appeal of evidentiary issues;

    (j)     failing to request jury instructions on the affirmative defenses of intervening cause and self-defense, the mitigator of heat of passion, and the lesser offenses of manslaughter or criminally negligent homicide; and

    (k)     cumulative error.

(7)     the postconviction court abused its discretion when it failed to transmit the complete record on appeal, rejected his claims on the merits, and failed to make findings of fact and conclusions of law as to two of the claims presented; and

(8)     his sentence was enhanced illegally in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

Judge Weinshienk dismissed claim five as procedurally barred and she dismissed claim seven because that claim does not raise a federal constitutional issue.

On September 17, 2008, Applicant filed a motion to add claims (docket #25) that counsel on direct appeal was ineffective.[1]  Applicant specifically alleges that appellate counsel failed to raise two specific claims in Applicant's direct appeal.  The two claims appellate counsel allegedly failed to raise were claims that trial counsel was not allowed to attack the credibility of Morris Frison and that Applicant's sentence is illegal.  On November 12, 2008, Respondents filed a response (docket #31) to Applicant's motion arguing that the motion should be denied because the claims are unexhausted and procedurally barred and lack substantive merit.  On March 20, 2009, Applicant filed a reply (docket #44) to Respondents' March 9 response.  On April 28, 2009, I entered an order (docket #48) granting the motion to add claims and rejecting Respondents' argument that the claims are unexhausted.  I specifically reserved ruling on the merits of the added ineffective assistance of appellate counsel claims.  On May 19, 2009, Applicant filed a supplement (docket #49) to his claims of ineffective assistance of appellate counsel.

---

[1]Applicant's motion to add a claim was combined in one document with a motion to reconsider Judge Weinshienk's order dismissing two of his claims.  On October 29, 2008, the motion to reconsider was denied (docket #29).

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time Applicant's conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law. *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id.* at
> 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective

inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

### III.  MERITS OF THE CLAIMS

A.    Claim One

Applicant alleges in his first claim that he was deprived of a jury finding on the heat of passion element of second degree murder.  He specifically argues that his rights were violated because the Constitution requires the jury to find beyond a reasonable doubt all of the facts necessary to establish each element of the offense charged.  It was clearly established when Applicant was convicted that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970); *see also Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993).

Under Colorado law, "[a] person commits the crime of murder in the second degree if the person knowingly causes the death of a person."  Colo. Rev. Stat. § 18-3-103(1).  In general, second degree murder is a class 2 felony in Colorado.  *See* Colo. Rev. Stat. § 18-3-103(3)(a).  However, "murder in the second degree is a class 3 felony where the act causing the death was performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person."  Colo. Rev. Stat. § 18-1-103(3)(b).

The Colorado Court of Appeals rejected Applicant's claim that he was denied a jury finding regarding heat of passion because "provocation is not an element of the offense of second degree murder" under Colorado law.  *Frazier I*, slip op. at 2.  Instead, provocation "is a mitigating factor that, when proven, reduces the level of the offense from a class two to a class three felony, thus resulting in a lesser sentence."  *Id.*  The

9

state court in *Frazier I* relied on a decision by another panel of the court of appeals, *see People v. Garcia*, 1 P.3d 214 (Colo. Ct. App. 1999), that subsequently was affirmed by the Colorado Supreme Court, *see People v. Garcia*, 28 P.3d 340 (Colo. 2001).

"On *habeas* review, . . . the [state] courts' interpretation of the state . . . statute is a matter of state law binding on this court." *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002). Therefore, because provocation is not an element of the offense of second degree murder under Colorado law, the decision of the Colorado Court of Appeals is not contrary to or an unreasonable application of Supreme Court law as expressed in *Winship*. Because Applicant's right to have a jury find all of the facts necessary to establish each element of second degree murder beyond a reasonable doubt was not violated, I find that claim one lacks merit and must be dismissed.

B.    Claim Two

Applicant's second claim is related to the first claim. He alleges in claim two that, assuming heat of passion is not an element of the offense of second degree murder, the trial court still erred in failing to instruct the jury on heat of passion in violation of his right to due process. Although Applicant asserts that "there was substantial evidence presented during [his] trial to show that he acted upon a sudden heat of passion caused by serious and highly provoking acts of the deceased" (Traverse at 6), he fails to specify what those serious and highly provoking acts were. According to the Colorado Court of Appeals, Applicant asserted on direct appeal that "he was provoked to stab the victim by the victim's acts of first selling him fake drugs for $100, later refusing to refund his money, arguing and scuffling with the defendant, and attempting to stab the defendant." *Frazier I*, slip op. at 3. The state court rejected Applicant's claim that he was entitled to

10

an instruction on heat of passion because, "[a]lthough there is evidence in the record that, if believed, might support the assertion that the victim committed those acts, they are not, as a matter of law, of the type that would provoke a reasonable person to kill." *Id.*

An applicant challenging a state court conviction based on an alleged error in failing to give a particular jury instruction has a heavy burden. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997). Generally, an error in jury instructions is not reviewable in federal habeas corpus proceedings unless the error renders the entire proceedings fundamentally unfair. *See id.*; *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)) for the proposition that "[t]he question in a collateral proceeding is whether the 'ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'"); *Thornburg v. Mullin*, 422 F.3d 1113, 1126 (10th Cir. 2005) (trial court's failure to give voluntary intoxication instruction sua sponte is reviewed only for denial of fundamental fairness and due process).

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). My "[i]nquiry into fundamental fairness requires examination of the entire proceedings." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

As noted above, Applicant argued on direct appeal that "he was provoked to stab the victim by the victim's acts of first selling him fake drugs for $100, later refusing to

11

refund his money, arguing and scuffling with the defendant, and attempting to stab the defendant," *Frazier I*, slip op. at 3, and the state court rejected Applicant's claim that he was entitled to an instruction on heat of passion because, "[a]lthough there is evidence in the record that, if believed, might support the assertion that the victim committed those acts, they are not, as a matter of law, of the type that would provoke a reasonable person to kill," *id.*

The transcripts of Applicant's trial reveal that the victim did sell fake drugs to Applicant for $100.00 and that Applicant became angry when he discovered the drugs were fake.  There also was testimony that, when Applicant confronted the victim some time later, Applicant concealed a knife behind his back and stabbed the victim without any aggressive action by the victim.  (Rep.'s Tr. at 105-112, 145, 216-22.)  In light of this testimony, and mindful that I "must tread gingerly and exercise considerable self restraint," *Duckett*, 306 F.3d at 999, I cannot conclude that the failure to instruct the jury on heat of passion rendered Applicant's entire trial fundamentally unfair.  As a result, the state court's resolution of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  Claim two will be dismissed because Applicant's right to due process was not violated.

C.    Claim Three

Applicant contends in his third claim that the trial court erred in precluding opinion and reputation testimony concerning the victim's character for violence and aggressiveness.  Applicant asserts that evidence of the victim's violent and aggressive nature was relevant to show that the victim probably acted in conformity with his character.  He further asserts that, because he was not offering the evidence to show

12

his own state of mind or fear of the victim, it was not necessary to show that he had any knowledge of the victim's character.  Applicant contends that the trial court did not understand the purpose for which the evidence was being offered and that precluding this evidence gravely weakened his presentation of the affirmative defense of self-defense.

On direct appeal, the Colorado Court of Appeals rejected this claim for the following reasons:

> Reputation or opinion evidence concerning a victim's character may be admitted under CRE 405(a) as circumstantial evidence of the victim's initial aggression, notwithstanding a defendant's lack of knowledge about the victim's reputation at the time of the offense.
>
> Here, defendant asserts he made two attempts to elicit testimony regarding the victim's character for violence to provide circumstantial evidence of the victim's initial aggression.
>
> First, the aide, who had known the victim for most of his life, testified that the victim sometimes "[got] real loud and bothersome when he [got] drunk," and "could be kind of scrappy when he was drinking."  He had, however, never seen the victim in a fight.
>
> The prosecutor then objected that the evidence was not relevant until it was established that defendant had knowledge of the victim's reputation for violence at the time of the offense.  Defense counsel then stated that he "didn't intend to go any further at this point."  In our view, defendant thereby abandoned any claim that additional evidence from the witness concerning this issue may have been relevant.
>
> The second instance occurred when defense counsel was questioning the investigating detective.  The detective confirmed the aide had told him "that [the victim] gets real loud and bothersome when he gets drunk."  Defense counsel then asked, "Why did that come up?"

13

> The prosecutor objected, stating that they had "talked about this before," and that it was not relevant.  The court sustained the objection.  Defendant made no offer of proof concerning the evidence he hoped to elicit.
>
> Because he failed to make an offer of proof with regard to any excluded evidence, defendant failed to preserve the issue for review, and we will not further address it.

*Frazier I*, slip op. at 4-5 (citations omitted) (alterations in original).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Therefore, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000); *see also Fox v. Ward*, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that, to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").

As stated above, my "[i]nquiry into fundamental fairness requires examination of the entire proceedings," *Le*, 311 F.3d at 1013, and I must exercise considerable self restraint in conducting this fundamental-fairness analysis, *see Duckett*, 306 F.3d at 999.

Based on my review of the transcripts of Applicant's state court trial, I cannot conclude that exclusion of opinion and reputation testimony concerning the victim's character for violence and aggressiveness rendered the trial as a whole fundamentally unfair in violation of Applicant's right to due process.  As noted above, there was

14

testimony that Applicant concealed a knife behind his back and stabbed the victim without any aggressive action by the victim. (Rep.'s Tr. at 105-112, 145, 216-22.) The prosecution also introduced testimony and pictures of Applicant when he was arrested to demonstrate that he had no injuries that would indicate he had been involved in a fight. (Rep.'s Tr. at 418-20.) Finally, counsel for Applicant made no argument for why evidence of the victim's character for violence and aggressiveness was relevant in response to the prosecution's objections. Although there was some evidence of a physical altercation between Applicant and the victim, I do not find that the trial, on the whole, was fundamentally unfair. Therefore, I find that Applicant's third claim for relief also lacks merit and must be dismissed because the state court's resolution of that claim was neither contrary to nor an unreasonable application of clearly established federal law.

      D.    <u>Claim Four</u>

Applicant alleges in his fourth claim both that the trial court erred in preventing the defense from impeaching the testimony of Morris Frison with evidence that Mr. Frison had been charged with a felony offense and that Mr. Frison was on cocaine when he gave his statement to the police. Mr. Frison was the friend of the victim who was with the victim when he was stabbed and took the victim to the hospital. Applicant specifically alleges that he was prevented from introducing evidence regarding Mr. Frison's pending charges that would have demonstrated his testimony was influenced by the hope or expectation of leniency. With respect to Mr. Frison's statement to the police, Applicant sought to introduce evidence that Mr. Frison's weepy demeanor when giving the statement was caused by the effects of crack cocaine usage and not, as

suggested by the prosecution, the emotions generated by telling the truth.

I first will address the exclusion of evidence of Mr. Frison's pending charges. The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. One of the primary interests secured by the Confrontation Clause is the right of cross-examination, *see Davis v. Alaska*, 415 U.S. 308, 315 (1974), because cross-examination "is the principal means by which the believability of a witness and the truth of his testimony are tested," *id.* at 316. However, a defendant does not have an unlimited right to cross-examination, and the trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Thus, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

The Colorado Court of Appeals relied on state cases in setting forth the proper standards to apply to Applicant's claim that the trial court erred in preventing the defense from impeaching the testimony of Mr. Frison.

> The trial court also has discretion to determine the proper scope and limits of cross-examination, and, absent an abuse of discretion, such rulings will not be disturbed on appeal. Nevertheless, it is constitutional error for a trial court to limit excessively a defendant's cross-examination of a witness regarding credibility, especially concerning bias, prejudice, or motive for testifying.

16

Evidence of pending charges is not admissible as
bearing on a witness' general credibility.  However, that rule
does not prohibit testimony tending to show motive, bias,
prejudice, or interest of a witness in the outcome of the trial.
The exposure of a witness' motivation in testifying is a
proper and important function of the constitutionally
protected right of cross-examination.

Inquiry as to motivation is especially important as to a
witness charged with or threatened with criminal prosecution
for other alleged offenses not connected with the case in
which he testifies because the witness' testimony might be
influenced by a promise, hope, or expectation of immunity or
leniency with respect to the pending charges against him.

*Frazier I*, slip op. at 6-7 (citations omitted).  Ultimately, the Colorado Court of Appeals

concluded that Applicant's rights were not violated by excluding evidence regarding Mr.

Frison's pending charges.

Defendant asserts that he made three attempts to
impeach the testimony of the victim's friend by showing that
a robbery charge was pending against him in an unrelated
case, thus demonstrating that the testimony might have
been influenced by a promise, hope, or expectation of
immunity or leniency.  He did so by attempting to introduce a
newspaper article reporting that the friend had been charged
with robbery; attempting to ask the friend why he was not
employed; and finally, attempting to ask another witness
whether the friend had told him why he was incarcerated.

Concerning the newspaper article, after the friend had
identified it at trial, defense counsel offered it into evidence.
The prosecution, however, objected that it was not relevant.
Defense counsel then stated that the evidence went
"towards [the witness'] credibility."  However, evidence of the
pending robbery charge was inadmissible for defense
counsel's stated purpose.  Accordingly, we reject
defendant's assertion of error as to that instance.

Defendant also asserts that he attempted to impeach
the friend by asking him why he was not employed as a way
of revealing that his unemployed status was a result of the
pending robbery charge.  However, because he failed to

17

> make an offer of proof with regard to any excluded evidence, defendant has again failed to preserve the issue for review.
>
> Finally, defendant asserts that he attempted to impeach the friend by asking a witness who had been incarcerated with him whether the friend had told him "what he was in jail for." The prosecution objected without giving a specific reason and the court sustained the objection.
>
> However, later in the trial defense counsel elicited testimony from that particular witness that, when he was incarcerated with the friend, the friend had told him that he was hoping to "cut some kind of deal to get out of jail with – with his – with this case pending." Thus, contrary to defendant's claim, evidence that the friend's testimony might have been influenced by an expectation of leniency with respect to the pending robbery charge was placed before the jury. Accordingly, any error in the court's ruling is harmless.

*Frazier I*, slip op. at 7-8 (citations omitted).

To the extent Applicant sought to impeach Mr. Frison's testimony by showing that his testimony was influenced by the hope or expectation of leniency with respect to his pending charges, that line of questioning clearly is protected under the Sixth Amendment. *See Davis*, 415 U.S. at 316. However, I agree with the Colorado Court of Appeals that any error in excluding such testimony was harmless.

"[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless I conclude that it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. If the evidence is balanced so evenly that I am in grave doubt about whether the error meets this standard, I must hold that the error is not harmless.

18

*O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995).  I make this harmless error

determination based upon my review of the entire state court record.  *See Herrera v.*

*Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

The fact that Applicant was not allowed to cross-examine Mr. Frison regarding

his pending charges and his hope for leniency with respect to the pending charges was

harmless error because evidence that Mr. Frison was facing charges and was hoping

his testimony against Applicant would result in leniency with respect to the pending

charges was presented to the jury during the testimony of another witness.  (Rep.'s Tr.

at 482-83.)  As a result, I do not find that limiting the cross-examination of Mr. Frison

with respect to his pending charges had a substantial and injurious effect on the result

of Applicant's trial.

I next will address the portion of Applicant's fourth claim in which he contends

that he was prevented from introducing evidence that Mr. Frison's weepy demeanor

when giving his statement to the police was caused by the effects of crack cocaine

usage and not, as suggested by the prosecution, the emotions generated by telling the

truth.  The Colorado Court of Appeals rejected Applicant's claim that his rights were

violated by the exclusion of evidence that Mr. Frison he was on cocaine when he gave

his statement to the police.

> Defendant also asserts that he attempted to impeach
> the friend by showing that he had used drugs on the night of
> the murder, and that the friend's "weepy" demeanor was the
> result of that drug use rather than, as the prosecution
> contended, the result of telling the truth.  Defendant did so
> by attempting to call another witness to testify that she had
> often been with the friend while he was under the influence
> of drugs, and that during those times, he had displayed a
> demeanor similar to that which he displayed to the police on

19

the night of the murder.

      The witness stated that she had known the friend for twenty years, and had seen him when he was under the influence of crack cocaine.  However, upon the prosecution's objection, the friend was barred from stating when such observations were made or what characteristics the friend had displayed while under the influence of the drug.

      In general, evidence of a person's character or character traits may not be admitted to show that the person acted in conformity therewith.  Therefore, evidence that the friend had displayed a certain demeanor when he had used drugs in the past was not admissible to show that his similar demeanor on the night of the murder was the result of using drugs on that night.  Hence, the trial court did not err in refusing to allow the witness to testify.

      Moreover, given that the witness' proffered testimony involved events that had occurred two years prior to the trial in this case, we find no abuse of discretion in the trial court's decision to exclude the evidence.

*Frazier I*, slip op. at 9-10 (citations omitted).

I review this alleged error using the fundamental fairness standard discussed in connection with Applicant's third claim for relief.  To reiterate, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results."  *Mayes*, 210 F.3d at 1293; *see also Fox*, 200 F.3d at 1296-97 (stating that, to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").  In addition, my "[i]nquiry into fundamental fairness requires examination of the entire proceedings," *Le*, 311 F.3d at 1013, and I must exercise considerable self restraint in conducting this fundamental-fairness analysis, *see Duckett*, 306 F.3d at 999.

I cannot conclude that exclusion of this evidence violated Applicant's right to due process.  According to Applicant, Mr. Frison's weepy demeanor when he gave his statement to the police was caused by the effects of his crack cocaine usage.  However, Mr. Frison did not display a weepy demeanor throughout his interview.  In fact the detective who interviewed Mr. Frison testified that Mr. Frison's demeanor changed during the interview and that Mr. Frison began crying only when he related his final version of the events surrounding the victim's death.  (Rep.'s Tr. at 352-55.)  As a result, excluding testimony that Mr. Frison's weepy demeanor was caused by his usage of crack cocaine did not result in a trial that was fundamentally unfair.

      E.    <u>Claim Six</u>

Applicant alleges in his sixth claim that he received ineffective assistance of counsel.  It was clearly established when Applicant was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether Applicant has established prejudice, I must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Applicant. *See Boyd*, 179 F.3d at 914.

Finally, ineffective assistance of counsel claims are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland*, 466 U.S. at 697.

As noted above, Applicant's ineffective assistance of counsel claim has eleven subparts. The Colorado Court of Appeals substantively addressed only Applicant's contention that counsel was ineffective by failing to timely raise an intervening cause defense. *See Frazier III*, slip op. at 5-7. The Colorado Court of Appeals did not address Applicant's other allegations of ineffective assistance of counsel because Applicant did not include the trial transcript as part of the record on appeal. *See id.* at 4. As a result, the Colorado Court of Appeals presumed that the trial court ruled correctly with respect to Applicant's other claims of ineffective assistance of counsel.

1.   <u>Failure to file pretrial motions to suppress statements and evidence, to suppress identification, to recuse the judge, and to receive disclosure of any concessions made by the prosecution to Morris Frison.</u>

Applicant first claims that counsel was ineffective by failing to file various pretrial motions.  Applicant concedes that not all of the pretrial motions he discusses in his Traverse were identified during the state court postconviction proceedings.  (Traverse at 14.)  Nevertheless, I will address all of the pretrial motions Applicant discusses in the Traverse.  Respondents argue that this ineffective assistance of counsel claim lacks merit because Applicant fails to provide specific details regarding the pretrial motions counsel should have filed, including what factual basis exists for the stated motions and what evidence would have been excluded if the motions were successful.  Although Applicant provides much more detail in his Traverse regarding the pretrial motions counsel allegedly should have filed, I agree that the claim still is lacking.

Applicant first contends that counsel should have filed a motion to suppress statements he made during his interrogation.  Applicant specifically alleges that he made statements to the investigating detectives before he was provided with counsel that were used against him at trial.  Applicant further alleges that counsel "did not file a motion to suppress these statements[,] which leads me to believe that counsel was not aware of these statements due to his poor pretrial investigation." (Traverse at 14.) However, because Applicant does not identify the allegedly harmful statements and he fails to demonstrate that a motion to suppress these statements would have been granted, I find that Applicant fails to demonstrate either that counsel was ineffective or that he suffered any prejudice from this alleged error.  *See Humphreys*, 261 F.3d at

1022 n.2 (conclusory allegations are not sufficient to warrant habeas relief).

Applicant next asserts that counsel failed to file a motion to recuse the judge. Applicant maintains that a motion to recuse should have been filed because a friend of the judge's clerk told the judge's clerk that she had received information relevant to Applicant's case from her ex-boyfriend and the information was introduced at trial during the ex-boyfriend's testimony. This claim will be dismissed because Applicant fails to demonstrate that these circumstances required recusal of the trial judge or that there is a reasonable probability the jury's verdict would have been different if a different judge had presided over the trial. *See id.* (conclusory allegations are not sufficient to warrant habeas relief).

Applicant next argues that counsel should have filed a motion to suppress his videotaped statement after the prosecution indicated on the morning of trial that he intended to introduce the videotaped statement. The videotape of Applicant's statement was played to the jury during trial. However, other than a conclusory assertion that introduction of the videotaped statement violated his constitutional rights, Applicant fails to explain the specific grounds on which a motion to suppress the videotaped statement should have been filed and he fails to demonstrate that any such motion would have been successful in suppressing the videotaped statement. Therefore, this allegation of ineffective assistance of counsel lacks merit. *See id.* (conclusory allegations are not sufficient to warrant habeas relief).

Applicant next argues that counsel should have filed a motion to suppress identification by Mr. Frison, who allegedly identified Applicant in a photographic lineup. However, because there was no testimony during trial regarding any photographic

24

lineup, Applicant fails to demonstrate that counsel was ineffective or that he suffered any prejudice from this alleged error.

Applicant also claims that counsel was ineffective by failing to file a motion for disclosure of concessions offered by the government to Mr. Frison in exchange for his testimony. However, Applicant fails to demonstrate that any concessions were offered to Mr. Frison in exchange for his testimony. Furthermore, evidence that Mr. Frison hoped his testimony against Applicant would result in leniency with respect to his pending charges was presented to the jury. (Rep.'s Tr. at 482-83.) Therefore, this ineffective assistance of counsel claim lacks merit.

Applicant next claims that counsel should have filed a motion to suppress the knife introduced into evidence because it was undisputed that the knife introduced into evidence was not the murder weapon. However, even assuming the knife was not relevant and could have been suppressed, Applicant still fails to demonstrate that he suffered any prejudice. It was clearly stated at trial that the knife introduced into evidence was not the murder weapon and Applicant fails to demonstrate a reasonable probability that he would have been acquitted if this knife had not been admitted into evidence.

Applicant finally claims that counsel should have filed a motion "requesting an affirmative defense of intervening cause, self-defense and lower possible penalties such as heat of passion, manslaughter or criminal [sic] negligent homicide." (Traverse at 17.) In his discussion of this claim, Applicant's argument is limited to counsel's alleged failure to raise the affirmative defense of intervening cause, which Applicant describes as "the only viable defense to the evidence the state had." (Traverse at 18.) According to

25

Applicant, Mr. Frison failed to take the victim to the hospital in a timely manner after he was stabbed and the failure to promptly take the victim to the hospital was an intervening cause of death.  Applicant also contends that the victim ingested cocaine after he was stabbed, which accelerated his loss of blood.  Applicant asserts that counsel's request for a jury instruction on intervening cause was denied because he had failed to raise that affirmative defense in a motion thirty days prior to trial.  I disagree.

Counsel did request an instruction on intervening cause.  (Rep.'s Tr. at 548.) Following argument, that request was denied on the merits, not because the request was untimely.  (*Id.* at 548-67.)  On appeal, the Colorado Court of Appeals upheld "the trial court's ruling that defendant did not carry his burden of demonstrating that he was prejudiced by counsel's alleged ineffectiveness in his investigation and presentation of an intervening cause defense," *Frazier III*, slip op. at 7, because Applicant's evidence demonstrated only that the victim *could* have survived if he had been taken to a hospital sooner, not that the victim *would* have survived.  *Id.*, slip op. at 6-7.  As a result, Applicant failed to present sufficient evidence under state law warranting a jury instruction on intervening cause.  *Id.*  Therefore, this claim lacks merit because counsel did, in fact, request a jury instruction on intervening cause.  Furthermore, even if counsel had not requested such an instruction, Applicant cannot demonstrate that he suffered any prejudice because I agree with the state courts that there was no evidentiary basis under state law to argue the affirmative defense of intervening cause.

      2.    <u>Failure to object to speculative testimony of Mr. Hargrove.</u>

Applicant next argues that counsel was ineffective by failing to object to speculative testimony by Mr. Hargrove.  Mr. Hargrove was a bartender who served Applicant on the night of the murder and was with Applicant throughout the evening after getting off work.  In his second amended application, Applicant argued that Mr. Hargrove provided speculative testimony about how many drinks he served Applicant. In his Traverse, Applicant also claims that Mr. Hargrove provided speculative testimony that Applicant is ambidextrous and that Applicant and the victim had engaged in a drug transaction on the night of the murder.

Mr. Hargrove clearly had personal knowledge regarding the number of drinks he served Applicant, although he did not remember exactly how many drinks it was.  In any event, Applicant fails to demonstrate a reasonable probability that the result of his trial would have been different if counsel had objected to Mr. Hargrove's inexact testimony regarding the number of drinks he served Applicant.  With respect to Mr. Hargrove's statement that Applicant is ambidextrous, it is clear that Applicant believes the statement is erroneous, but he fails to demonstrate that the testimony was speculative or would not have been admitted if counsel had objected.  Finally, Applicant fails to demonstrate any prejudice from counsel's failure to object to Mr. Hargrove's testimony that Applicant and the victim had engaged in a drug transaction on the night of the murder.  Mr. Hargrove spent the entire evening with Applicant and his testimony regarding the events of that evening, which were based on his personal knowledge, make it abundantly clear that Applicant purchased what he believed to be drugs from the victim.  (Rep.'s Tr. at 181, 195.)  Therefore, this ineffective assistance of counsel

27

claim lacks merit and will be dismissed.

3.    <u>Failure to object to hearsay testimony of Morris Frison.</u>

Applicant next claims that counsel was ineffective by failing to object to hearsay testimony by Mr. Frison.  More specifically, Applicant alleges that Mr. Frison "testified in regards to the conversation between [the victim] and [Applicant] that they had at the white house out of ear and sight of Frison." (Traverse at 19.)  However, I agree with Respondents that this claim lacks merit because Applicant fails to identify the exact testimony he is challenging, whether such testimony actually was hearsay, whether there were any applicable hearsay exceptions, or how the result of his trial would have been different if counsel had objected and the testimony was excluded.  *See Humphreys*, 261 F.3d at 1022 n.2 (conclusory allegations are not sufficient to warrant habeas relief).  Therefore, this ineffective assistance of counsel claim also will be dismissed.

4.    <u>Failure to object to leading questions.</u>

Applicant's next ineffective assistance of counsel claim is that counsel failed to object to leading questions.  However, rather than identifying any specific questions that allegedly were objectionable, Applicant states only that "Frison's entire testimony was filled with leading questions." (Traverse at 21.)  This claim lacks merit because counsel's decision not to object to leading questions was a part of his trial strategy.  Applicant concedes that counsel testified he did not object to any leading questions because it is not his style and he considers them to be harmless.  Applicant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice," *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002), and he has failed to

28

make such a showing in this case.  Therefore, this claim also lacks merit.

     5.    <u>Failure to adequately prepare for and conduct cross-examination of prosecution witnesses.</u>

Applicant next claims that counsel was ineffective because counsel's cross-examination of every prosecution witness was unprepared, unorganized, conducted without the use of leading questions, and lacking a cogent purpose.  In particular, Applicant contends that counsel failed to establish in his cross-examinations of the medical witnesses that the victim could have lived for more than an hour after being stabbed, whether any additional procedures could have been undertaken to save the victim's life, and whether the presence of cocaine in a person would accelerate blood loss after an injury.  Applicant also contends that counsel failed adequately to highlight the inconsistencies in Mr. Frison's varying accounts of the events on the night the victim was murdered.

This claim lacks merit because Applicant still fails to demonstrate the existence of any evidence that the victim actually would have survived if he had been taken directly to the hospital after being stabbed.  As discussed above, Applicant was not entitled to a jury instruction on intervening cause under state law because the evidence he presented demonstrated only that the victim *could* have survived if he had been taken to a hospital sooner, not that the victim *would* have survived.  *Frazier III*, slip op. at 6-7.  Applicant does not contend that effective cross-examination of the medical witnesses would have established that the victim would not have died.  Furthermore, counsel did focus on the inconsistencies in Mr. Frison's varying accounts of the events of the night in question during his cross-examination (Rep.'s Tr. at 133-38, 140, 142,)

and Applicant fails to demonstrate what additional cross-examination should have been conducted or what additional evidence would have been presented if further cross-examination were conducted.  Although Applicant asserts that further cross-examination of Mr. Frison would have demonstrated that Mr. Frison was biased because he was hoping for lenient treatment with respect to his pending charges, the jury was made aware of that information through the testimony of another witness. Therefore, I find that this claim also lacks merit.

      6.   <u>Failure to properly raise an intervening cause defense.</u>

Applicant next contends that counsel was ineffective for failure to adequately investigate and present an intervening cause defense, which he again describes as the only viable defense.  (Traverse at 28.)  As discussed above, the Colorado Court of Appeals upheld "the trial court's ruling that defendant did not carry his burden of demonstrating that he was prejudiced by counsel's alleged ineffectiveness in his investigation and presentation of an intervening cause defense," *Frazier III*, slip op. at 7, because Applicant's evidence demonstrated only that the victim *could* have survived if he had been taken to a hospital sooner, not that the victim *would* have survived, *id.* at 6-7.  As a result, Applicant failed to present sufficient evidence under state law warranting a jury instruction on intervening cause.  *Id.*  Applicant still fails to demonstrate the existence of any evidence that would warrant a jury instruction on intervening cause. Therefore, because there was no evidentiary basis to argue the affirmative defense of intervening cause, this ineffective assistance of counsel claim also lacks merit.

7.     Failure to interview witnesses favorable to the defense.

Applicant's next ineffective assistance of counsel claim is premised on counsel's alleged failure to interview witnesses favorable to the defense.  Applicant specifically alleges that counsel failed to call as defense witnesses Xavier Saccomanno and Sam Quintana, whose testimony would have demonstrated that the victim obtained and used cocaine after being stabbed.  Applicant also alleges that "[a]ll of the witnesses for the defense were unprepared as the transcripts show that witnesses did not know what they were testifying to, nor did counsel try to develop a line of questioning that was consistent with endorsed defenses."  (Traverse at 30.)

With respect to the witnesses who allegedly would have provided testimony to demonstrate that the victim obtained and used cocaine after being stabbed, Applicant maintains that this evidence would have "refuted testimony by states [sic] witnesses that the victim died in [sic] route to the hospital and would have established the all important time-line in which this case hinged on and to prove intervening cause."  (Traverse at 30-31.)  However, Applicant still fails to demonstrate that he would have been entitled to raise intervening cause as a defense because neither of these witnesses could have testified that the victim actually would have survived if he had been taken directly to the hospital rather than being taken to obtain and use cocaine.

Applicant's contention that none of the defense witnesses were prepared will not support an ineffective assistance of counsel claim because he fails to demonstrate specifically what additional testimony they would have provided that might have altered the outcome of his trial.  *See Humphreys*, 261 F.3d at 1022 n.2 (conclusory allegations are not sufficient to warrant habeas relief).  Therefore, this claim also will be dismissed.

31

8.      Failure to obtain an independent expert witness.

Applicant next claims that counsel failed to obtain an independent expert witness

to support his intervening cause defense, to demonstrate whether Applicant's blood was

on the victim's shirt, and to refute the prosecution's witnesses.  However, Applicant fails

to demonstrate that such an expert witness or witnesses exist and could have provided

testimony that might have altered the outcome of his trial.  In other words, he still fails to

demonstrate the existence of any evidence that the victim actually would have survived

if he had been taken directly to the hospital.  The state court's factual determination that

Applicant's evidence demonstrated only that the victim *could* have survived if he had

been taken to a hospital sooner, not that the victim *would* have survived, *Frazier III*, slip

op. at 6-7, is presumed correct and Applicant's unsupported speculation that contrary

expert testimony could have been presented is not the sort of clear and convincing

evidence necessary under 28 U.S.C. § 2254(e)(1) to overcome that presumption of

correctness.  Applicant also fails to demonstrate the existence of any expert evidence

that his blood was on the victim's shirt or that effectively refutes the prosecution's

witnesses in a manner that might have led to a different outcome.  Therefore, this

ineffective assistance of counsel claim also will be dismissed.

9.      Failure to establish a proper record for appeal of evidentiary issues.

Applicant next claims that counsel was ineffective by failing to establish a proper

record for appeal of two evidentiary issues.  More specifically, Applicant alleges that

counsel failed to make a record with respect to his claim that the trial court erred in

excluding evidence of the victim's propensity for violence when he was drunk.  I already

have rejected Applicant's third claim for relief because the exclusion of this evidence did

32

not violate Applicant's right to due process.  I also find that Applicant did not suffer any prejudice from counsel's alleged failure to preserve an adequate record because Applicant fails to demonstrate how evidence of the victim's alleged propensity for violence might have resulted in a different outcome at trial.

Applicant also claims in his Traverse that counsel failed to preserve a record with respect to testimony he attempted to obtain from Dr. Blair Presti.  However, because Applicant makes no argument as to how this impaired his ability to raise any claim on appeal, I find that this claim lacks merit.

> 10.   Failure to request jury instructions on the affirmative defenses of intervening cause and self-defense, the mitigator of heat of passion, and the lesser offenses of manslaughter or criminally negligent homicide.

Applicant's next ineffective assistance of counsel claim is premised on counsel's alleged failure to request jury instructions on the affirmative defenses of intervening cause and self-defense, the mitigator of heat of passion, and the lesser-included offenses of manslaughter and criminally negligent homicide.  I already have addressed and rejected Applicant's claim that counsel was ineffective by failing to properly raise an intervening cause defense.  With respect to Applicant's other assertions, Applicant fails to allege specific facts to demonstrate that he was entitled to jury instructions on self-defense, heat of passion, manslaughter, or criminally negligent homicide and he fails to demonstrate that the result of his trial may have been different if any or all of those instructions had been given.  Once again, Applicant's conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys*, 261 F.3d at 1022 n.2.  Therefore, this ineffective assistance of counsel claim also will be

dismissed.

11.    Cumulative error.

Applicant finally alleges that the cumulative effect of counsel's alleged errors amounts to ineffective assistance of counsel.  I disagree.  Considering the totality of the evidence presented at trial, *see Boyd*, 179 F.3d at 914, I do not find that Applicant has demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694. Therefore, this claim also will be dismissed.

F.    Claim Eight

Applicant asserts in his eighth claim that his sentence was enhanced illegally in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).  Applicant specifically argues that his sentence was enhanced illegally because the question of whether he was convicted of a crime of violence was not submitted to a jury.  Applicant also contends that his sentence was enhanced illegally by his prior convictions.

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303.

I find initially that Applicant's *Apprendi/Blakely* claim must be dismissed because

34

neither *Apprendi*, which was decided on June 26, 2000, nor *Blakely*, which was decided

on June 24, 2004, was clearly established at the time Applicant's conviction became

final.  As noted above, the Colorado Supreme Court denied Applicant's petition for writ

of certiorari on direct appeal on March 20, 2000.  Pursuant to Rule 13.1 of the Rules of

the Supreme Court of the United States, Applicant then had ninety days to seek review

in the United States Supreme Court, but he did not do so.  Therefore, his conviction

became final on June 19, 2000, when the time for filing a petition for writ of certiorari in

the United States Supreme Court expired.  *See Caspari v. Bohlen*, 510 U.S. 383, 390

(1994) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987)).  Furthermore, neither

*Apprendi* nor *Blakely* applies retroactively to cases on collateral review.  *See United*

*States v. Price*, 400 F.3d 844, 849 (10th Cir. 2005) ("*Blakely* does not apply retroactively

to convictions that were final at the time the Court decided *Blakely*."); *United States v.*

*Mora*, 293 F.3d 1213, 1219 (10th Cir. 2002) (holding that *Apprendi* does not apply

retroactively to cases on collateral review).

I also find that Applicant's *Apprendi/Blakely* claim lacks merit.  First, because

second degree murder is a *per se* crime of violence under Colorado law, Applicant's

enhanced sentence for that crime was mandatory and did not require proof of any

additional facts.  *See Vogt v. Novak*, 153 Fed. App'x 474, 477 (10th Cir. 2005).

Applicant's argument that *Apprendi* and *Blakely* prohibit an aggravated sentence on the

basis of his prior convictions is patently frivolous because *Apprendi* specifically excludes

prior convictions from the facts that must be found by a jury before an increased

sentence may be imposed.  Therefore, Applicant's eighth claim for relief also will be

dismissed because the state court's rejection of these arguments was neither contrary

to nor an unreasonable application of clearly established federal law.

G.     Claim Nine

As noted above, I entered an order on April 28, 2009, granting Applicant's motion

to add claims.  Applicant alleges in the added claims that counsel on direct appeal was

ineffective by failing to raise two specific claims.  The two claims counsel allegedly failed

to raise were claims that trial counsel was not allowed to attack witness Frison's

credibility and that Applicant's sentence is illegal.  My review of the ineffective

assistance of appellate counsel claims is governed by the standards in *Strickland*, with

one additional step.

> When a habeas petitioner alleges that his appellate counsel
> rendered ineffective assistance by failing to raise an issue on
> direct appeal, we first examine the merits of the omitted
> issue.  If the omitted issue is meritless, then counsel's failure
> to raise it does not amount to constitutionally ineffective
> assistance.  If the issue has merit, we then must determine
> whether counsel's failure to raise the claim on direct appeal
> was deficient and prejudicial.

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (citation omitted).

I find that Applicant's ineffective assistance of appellate counsel claims lack

merit.  First, appellate counsel did raise a claim on direct appeal challenging the

limitations imposed on trial counsel's efforts to challenge Mr. Frison's credibility.  With

respect to Applicant's claim that appellate counsel failed to challenge his enhanced

sentence based on *Apprendi* nor *Blakely*, neither of those cases had been decided at

the time of Applicant's direct appeal.  Furthermore, I already have rejected Applicant's

claims that his constitutional rights were violated by the limitations placed on trial

counsel's efforts to challenge Mr. Frison's credibility and the imposition of an enhanced

sentence.  As a result, Applicant cannot demonstrate that he suffered any prejudice from appellate counsel's alleged failure to raise those claims on direct appeal and this claim must be dismissed.

In conclusion, all of Applicant's remaining claims lack merit.  As a result, the action will be dismissed with prejudice.  Accordingly, it is

ORDERED that the second amended habeas corpus application is **DENIED** and the action is **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated:  October 15, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge